PHILIP MANGONE CO., Inc., v. UNITED
STATES.
No. J–281.

Court of Claims.
Dec. 7, 1931.

Louis J. Altkrug, of New York City (Eppstein, Axman & Hirshfield, of New York City, on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

BOOTH, Chief Justice.

The plaintiff in this case concedes an excise tax liability. The petition is for the recovery of what is alleged as excessive excise taxes levied and collected contrary to the law and regulations of the Commissioner of Internal Revenue.

Plaintiff is a New York corporation, engaged in manufacturing dresses, cloaks, and suits. It made its excise tax returns for the years 1919, 1920, and 1921 on garments manufactured and sold by it and paid the taxes shown to be due thereon. In April, 1922, the plaintiff's books of account and records were examined, and as a result thereof the Commissioner determined an additional tax of $3,263.39, together with interest and penalties, was due, and subsequently the plaintiff paid the same in the aggregate sum of $3,860.36. In January, 1923, a second examination of such of plaintiff's books as were available was made by the Commissioner and an additional tax of $7,693.48 was assessed against the plaintiff, which aggregated, with interest and penalties, the sum of $10,516.53. On April 14, 1923, as a result of a claim in abatement, this last additional tax was adjusted to $8,365.21, and the same was paid September 23, 1924. On July 27, 1925, plaintiff filed a claim for refund in the amount of $27,496.37; the same being denied by the Commissioner May 19, 1926.

Plaintiff's present claim is for $13,117, together with interest. The suit involves a question of fact and two legal propositions. The Revenue Act of 1918 (40 Stat. 1057, 1122), is as follows:

"Sec. 900. That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufac-

turer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased— * * *

"(19) Articles made of fur on the hide or pelt, or of which any such fur is the component material of chief value, 10 per centum."

The Commissioner had promulgated the following regulations apropos of discounts and expenses, viz.:

"Regulations 47

"Art. 4. Discounts and expenses.—A discount for cash or discount made subsequently to the sale can not be deducted in computing the price for the purpose of the tax."

Plaintiff asserts that the facts in the case, respecting this particular issue, establish that in the conduct of its business, involving sales of the taxable articles, it consistently observed the policy of granting its customers trade discounts and not cash discounts or discounts made subsequent to sales. It is conceded by the government that, if the plaintiff's method of sales establishes a consistent trade discount, the plaintiff is entitled to recover. There exists little room for dispute as to the exact method employed by plaintiff in making sales of its merchandise. Taxable garments sold to its customers were billed at list prices therefor. On the inventories going to the customers at the time of sale appeared the following symbols: "8/10" or "8/10 E. O. M." The first symbol indicated a discount of 8 per cent. if the bill was paid in ten days, and the other granted an 8 per cent. discount if the bill was paid ten days from the end of the month in which the goods were shipped. In some cases the plaintiff billed its goods at "2/10," "6/10," and "6/60." This last offer of discount, "6/60," afforded the customer an extended time for payment at a reduced discount rate. At times during the period here involved the plaintiff billed its customers at one rate of discount, and subsequently changed the rate and rendered another invoice. As a matter of fact, the plaintiff allowed its customers the rate of discount indicated, irrespective of whether they observed the terms of invoice or not. Where customers became delinquent and payments deferred, interest at the rate of 6 per cent. per annum was imposed and collected, computed upon the basis of an arbitrary date fixed by the plaintiff. In the event of insolvency of a customer involving bankruptcy, receivership, or trusteeship, plaintiff's claims were presented on the basis of list prices.

There is no doubt that the trade and business in which plaintiff was engaged observed a long-established custom of granting to its customers a trade discount. The difficulty we encounter in the decision of the case is our inability from the record to find that the plaintiff followed any certain and consistent custom in this respect by which any degree of uniformity obtained in the ascertainment of the price for which the goods were sold. What the record establishes is that the plaintiff formulated its individual system of discounts, adopting in part the custom of the trade and discarding the same in the observance of granted discounts which best served its needs in the way and manner of procuring cash payments for its merchandise. A trade discount, as we understand it, fixes a price for the invoiced article to the customer at the time it is sold; i. e., the list price and the discount or reduced price are fixed so that the customer possesses information as to the cost of merchandise to him in advance of the sale, and the Commissioner experiences little difficulty in ascertaining the taxable price of the merchandise sold. The record, we think, is so decidedly indefinite as to just what price was fixed or received for the merchandise involved that the Commissioner was justified under the law and regulations in proceeding as he did. We cannot hold from the evidence that any specific sales price was assented to by the customer or fixed by the plaintiff at the time the goods were sold, and hence, in our view of the case, the Commissioner could not have resorted to any source of information save the list price. No fault is to be found as to plaintiff's assertion of its legal rights in ascertaining tax liability with regard to this issue. The uncertainty and vacillating practice with regard thereto are what preclude the court from applying the law to the facts in the case and granting the relief contended for. J. H. Smith Grape Juice Co. v. United States, 63 Ct. Cl. 140.

Section 1105 of the Revenue Act of 1926 is a repetition of a similar provision carried in the Revenue Act of 1921 (42 Stat. 310, § 1309), and Revenue Act 1924 (section 1005 [26 USCA § 1248 note]). The section (44 Stat. 9, 113 [26 USCA § 1248]) reads as follows:

"Sec. 1105. No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the commissioner, after in-

vestigation, notifies the taxpayer in writing that an additional inspection is necessary."

 It is a fact that the plaintiff did not request the second examination of its books of account. It is also proven that it protested against the proceeding, and it is established that the revenue agent stated that, in the event the plaintiff refused access to the books of account, he could secure a fraud order and examine them at any time. What the plaintiff should have done, if it did not want the second examination made or if it regarded such investigation as unnecessary, was to stand upon its rights under the provisions of law and continue to refuse access to its books until the law was complied with and it had received notice in writing from the Commissioner of Internal Revenue that an additional inspection was necessary. This it did not do, but yielded to the request under protest. Aside from all this, however, we cannot hold that a deficiency assessment is illegal when the facts upon which it was based were ascertained in the way and manner proven.

The Board of Tax Appeals said in the case of McDonnell, 6 B. T. A. 685, 691:

"However, 'that section of the statute merely provides for the relief from unnecessary examinations of a taxpayer's books and does not propose to provide that any deficiency resulting from such investigation shall be void."

The plaintiff likens the testimony procured under the circumstances to testimony illegally forced from defendants in criminal cases. We feel confident the analogy is not sustainable, and that plaintiff's tax liability may not be determined upon the basis of the alleged illegal proceeding. We think the decision of the Board of Tax Appeals is sound.

█ The concluding paragraph of finding 8 shows that the plaintiff did add to its invoices of merchandise sold the amount of the excise tax it was legally obligated to pay upon its taxable garments sold, and that the amount added and collected in this manner is not established. Article 3 of Regulations 47 provides as follows:

"Art. 3. * * * Where a lump sum is specified as the price of a taxable article or articles, and other articles not taxable and not a component part of the taxable articles are included in the price, the tax attaches to the entire amount unless the selling prices of the taxable and nontaxable articles are segregated. In such case the tax will be measured by the price specified as the selling price of the taxable article or articles (examples 4 and 5). The following examples illustrate the method by which the manufacturer may separate the tax from the selling price in invoicing goods to the purchaser.

"Example (1): A, the manufacturer, quotes a selling price to B of $1 and bills the goods to B as:

"'Article No. 1; selling price, $1; tax, $0.05.'

"Example (2): A, the manufacturer, quotes a selling price of $1.05, stating that the price includes a tax of 5 cents, and bills the goods to B as:

"'Article No. 1; selling price, $1.05; 5 cents of the total represents tax.'

"Example (3): A, the manufacturer, quotes a selling price of $1.05, stating that 1/21 of the price represents tax, and bills the goods to B as:

"'Article No. 1, selling price $1.05, 1/21 of the total represents tax.'

"The tax in examples (1), (2), and (3) is computed upon $1, the quoted and actual selling price."

The plaintiff challenges the verity of this finding, and presents what is claimed as irrefutable evidence that the finding does not state the facts. The evidence relied upon is a detailed statement prepared by certified public accountants. This statement recites upon its face that it is a compilation made by said accountants of "refund claimed to be due on account of excise taxes" paid by the plaintiff. From the point of computation, the statement's accuracy is not challenged, but obviously it does not, nor does it purport to, disclose the plaintiff's custom and practice with respect to adding the excise tax to the price for which the goods were sold. There is no competent proof that it is a copy of the plaintiff's books of account or the invoices upon the basis of which collection was made by the plaintiff, and there is no way in which the court can find that plaintiff observed the regulations herein set forth in invoicing or receiving payment for the garments sold. The exhibit is part of the record, and, of course, available for what it is worth, but assuredly it does not establish the facts for which plaintiff contends, and is no more than a detailed statement of the total amount of merchandise sold, the list price, the excise tax thereon, and the refund claimed to be due prepared by the accountants to form a basis for a claim for refund. We have before us no records of the plaintiff or other proof refuting the finding,

and hence it is manifest that no proof exists from which the court may find that the plaintiff did, in fact, overpay its excise taxes. Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251. The plaintiff apparently concedes that the finding was supported by the record, for it was not challenged in its main brief, and seems to have escaped attention until emphasized by the defendant's brief, after which the plaintiff brings forward the exhibit discussed to prove the incorrectness of the finding. Plaintiff's own witness before the Commissioner sustains the finding.

■ There is a further reason why plaintiff may not recover. The taxes here involved were paid in different sums and on various dates from August 16, 1919, to January 23, 1922 (finding 3), the amount for the period totaling $103,105.91. Plaintiff's claim for refund was filed July 27, 1925. Section 1012 of the Revenue Act of 1924 (43 Stat. 253, 342, 26 USCA § 157(a), amending section 3228 of the Revised Statutes, is as follows:

"(a) All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, * * * be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax, penalty, or sum."

Obviously plaintiff's refund claim would extend only to taxes paid subsequent to July 27, 1921. No taxes were paid by plaintiff between March 22, 1921, and August 6, 1921 (Finding 3); therefore any refund of taxes paid prior to August 6, 1921, would fall within the foregoing statute of limitations. The record fails to disclose the proportion of taxes paid during the period from August 6, 1921, to January 23, 1922, which would, under plaintiff's contentions, come within the revenue laws as overpayments, and from the facts adduced we would be unable to find what proportion of the alleged overpayments was barred by limitation. The burden of proof is upon the plaintiff to establish overpayments. A judgment for overpayments cannot be predicated upon a basis of inferences, and we think the record sustains the defendant's contention that it is impossible for the court to compute any judgment upon the present state of the record in this case.

The petition is dismissed. It is so ordered.