**UNITED STATES of America,**
**Plaintiff,**

v.

**Lester T. SAWYER et al., Defendants.**

**Civ. A. No. 63–504–F.**

United States District Court
D. Massachusetts.

June 2, 1965.

W. Arthur Garrity, Jr., U. S. Atty., Frances C. Kissell, William F. Looney, Jr., Asst. U. S. Attys., Thomas R. Manning, Atty., Dept. of Justice, for plaintiff.

Tiffin & Tiffin, Kenneth C. Tiffin, Boston, Mass., for defendant A. C. Sawyer.

L. T. Sawyer, pro se. (also for Diadem, Inc.)

James A. Crotty, Richard G. Crotty, Vaughan, Esty, Crotty & Mason, Worcester, Mass., for defendant Worcester County Nat. Bank.

Willard I. Shattuck, Jr., for Whirla-Whip, Co.

Edwin E. Kaarela, Fitchburg, Mass., for Fitchburg Fed. Savings & Loan Assn.

James F. Coburn, Jr., Leominster, Mass., for defendant Wm. L. Hauger.

Richard Comerford, Leominster, Mass., pro se. (also for defendant Wachusett Finance Corp.).

Mirick, O'Connell, DeMallie & Lougee, Worcester, Mass., for Town of Princeton.

FRANCIS J. W. FORD, District Judge.

This is an action by the United States to foreclose certain tax liens on the properties of Lester T. Sawyer, Alice C. Sawyer, and Diadem, Inc. Certain other parties have been joined as defendants because they claim interests in these properties. Most of the relevant facts have been stipulated and the court adopts as its findings the statements of fact set forth in the stipulations on file.

There remain for decision questions arising from defendants' contention that there has been no valid assessment of the taxes claimed by the United States, and that as to some of these properties the lien of the United States should be discharged because in view of the value of the properties and the amount of the prior claims nothing could be realized by the United States from a foreclosure sale. Certain parties also ask rulings as to the priority of certain claims in the distribution of the proceeds from any foreclosure sale which may be ordered.

Defendants argue that from 1954 to 1958 their books were inspected on six separate occasions by three different agents of the Internal Revenue Service, that there was no notification by the Secretary that additional inspection was necessary, that these repeated inspections violated 26 U.S.C.A. § 7605(b) and consequently the deficiency assessments resulting from these inspections should be held invalid. Even assuming, which is not clear from the evidence, that these visits of the agents constituted separate inspections rather than a continuation of a single investigation, and assuming also (which is also unsettled, compare Reineman v. United States, 7 Cir., 301 F.2d 267 with Philip Mangone Co., Inc. v. United States, Ct.Cl., 54 F.2d 168) that the remedy for violation of § 7605(b) is to hold the resulting assessment invalid, defendants' argument must fail for a more basic reason. The tax deficiencies which government seeks to collect in this proceeding have been determined in proceedings between these taxpayers and the United States in the Tax Court. Taxpayers in those proceedings could have raised this challenge to the validity of the assessments involved. The decision of the Tax Court is res judicata and defendants cannot here litigate the validity of the assessment of the taxes which the Tax Court has found to be due. Commissioner of Internal Revenue v. Sunnen,

333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Erickson v. United States, Ct.Cl., 309 F. 2d 760.

■ There is due to the Worcester County National Bank a total of $87,154.-71, consisting of obligations of Lester and Alice Sawyer in the amount of $76,-154.71 and of obligations of Diadem, Inc. in the amount of $11,000. Certain real estate owned by the Sawyers is mortgaged to the bank to secure their obligations and 100 shares of the common stock of Wachusett Finance Corporation owned by Lester T. Sawyer is pledged to the bank to secure the obligations of Diadem, Inc. These properties are also subject to tax liens but the interest of the bank is prior to that of the United States.

It is the contention of taxpayers here and of the bank that the value of all of these properties is insufficient to satisfy the prior claim of the bank. Of course, if this is so, a sale of these properties by order of the court would produce no benefit for the government and there would be merit to taxpayers' suggestion that the government's liens should be discharged and the prior lien holder left to realize what benefit it can from its security.

Taxpayers have presented evidence as to the value of the specific items of property involved. The Wachusett Finance Corporation stock is not traded on the market, but an expert on the stocks of such corporations testified that in his opinion it would be possible to negotiate a sale of these 100 shares for $10,000. As to the real estate, the testimony of Sawyer and the real estate broker whom he called as an expert, was that the so-called Heifer and Cook farms taken together have a fair market value of $35,-000, a small apartment building has a fair value of $4000, an adjoining cottage has a fair value of $3000, and the remaining piece of property on County Road in East Princeton has a fair value of $2500. Defendants argue that this real estate thus could not bring at a sale more than $44,500 which would all be applied toward reduction of the bank's claim for $76,154.-71.

The court was not persuaded by the evidence that the values testified to represent the most which could be realized from a sale of these pieces of real estate. Defendants' expert did not impress the court. He knew of no sales of comparable property in the area. He testified as to an attempt to sell the two farms at auction but could not remember what the highest bid he received was. In support of his valuation of the two farms he testified to a purchase agreement for the sale of the two farms for $38,250. However, he could produce only a copy of a purported purchase agreement signed only by Sawyer. The ultimate test of the value of this property, of course, is what it will bring at an actual sale. The United States seeks the right to have these properties sold so as to realize on any possible value government's lien may have. On the evidence here, it cannot be said that government's liens are so clearly worthless that it should be denied that right.

■ As to certain other property such as Sawyer's preferred stock in Wachusett Finance Company, his stock of Diadem, Inc., and certain patents owned by him, defendants argue that they are worthless and that their sale should not be ordered. As to these there is no lien prior to that of government. Whatever is realized from the sale of these assets will all go to reduce government's tax claim. Some of these assets may have little or even no value, but the government is entitled to whatever a sale of them will bring and a sale should be ordered.

■ During the pendency of this action it appears that certain arrangements have been made under which the government has been receiving periodic payments from an annuity owned by the Sawyers, rental income from some of the real estate, and payments from the income derived from the operation of Diadem, Inc. It is for the government and not for the court to decide whether it would be more advantageous to enforce its right to have these properties sold (or, in the case of the annuity, to have

the commuted value of the policy paid to it) rather than to continue the present payment arrangements.

■ A question of priority arises from the claims of the town of Princeton based on its tax liens against several parcels of real estate of the Sawyers located in that town. These tax liens arose later in time than the tax liens of the United States, which in turn are subsequent to the bank's claim under its mortgage. However, under Massachusetts law the tax claims of the town have priority over the bank's claim. Proper distribution of the proceeds of the sale of these pieces of real estate must be determined in accordanc with the rule established in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. The United States is entitled to have its claim satisfied out of the proceeds of the sale to the extent that these proceeds exceed the amount necessary to satisfy the claim of the bank. If enough does not remain to pay the claims of the town, these claims cannot be satisfied out of the share allotted to the United States, since as between the United States and the town the United States has priority. But since under state law, the town has priority over the bank it is entitled to have its claim paid out of the portion of the proceeds which would otherwise be paid to the bank. United States of America v. Rahar's Inn, Inc., D.C.Mass., 243 F.Supp. 459 (April 7, 1965).

The United States is entitled to judgment that the defendants Lester T. Sawyer, Alice C. Sawyer and Diadem, Inc. are indebted to it for taxes in the amounts set forth as due in the stipulation with interest as provided by law, and ordering that the Monarch Life Assurance Company pay to the United States all payments due to Lester T. Sawyer under his annuity policy or else pay to the United States the commuted value of the payments under said policy, ordering that the liens of the United States on the real and personal property of defendants Lester T. Sawyer, Alice C. Sawyer and Diadem, Inc. be foreclosed and that such property be sold, that, subject to the tax claims of the town of Princeton, the proceeds of the sale of those properties mortgaged or pledged to the Worcester County National Bank be paid to the bank to the amount of the indebtedness due to it and secured by such mortgages or pledges, that the remaining proceeds from the sale of all these properties be paid to the United States to the amount of the indebtedness of the respective defendants to the United States, that the United States is entitled to judgment against defendants for any part of their respective tax liabilities which are not thereby satisfied, and that the tax claims of the town of Princeton be paid out of any amount remaining after satisfaction of the claim of the United States, provided that if the proceeds are insufficient to pay these claims in full, the tax claims of the town are to be paid out of the proceeds of the sale of the real estate subject to such taxes which would otherwise be payable to the Worcester County National Bank.

The parties will submit a form of judgment in accordance herewith.