TAYLOR S. HARDIN and KATHARINE B. HARDIN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardin v. Commissioner
Docket No. 8558-71.
United States Tax Court
T.C. Memo 1973-193; 1973 Tax Ct. Memo LEXIS 94; 32 T.C.M. (CCH) 892; T.C.M. (RIA) 73193; August 29, 1973, Filed Fred R. Tansill and Paul S. Richter, for the petitioners. David E. Price, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPTION QUEALY, Judge: Respondent determined a deficiency in the petitioners' income tax for the taxable year 1967 in the amount of $32,729.46. 2 Certain concessions having been made by the parties, the sole question before the Court is whether the petitioners are entitled to a full year's depreciation deduction in 1967 for a thoroughbred race horse they purchased in December of that year. FINDINGS OF FACT Some of the facts have been stipulated. Such facts and the exhibits attached thereto are incorporated herein by this reference. The petitioners are Taylor S. Hardin and Katharine *95 B. Hardin, husband and wife (hereinafter referred to as "petitioners").At the time of the filing of the petition and at all times relevant herein, the petitioners' legal residence was Newstead Farm, Upperville, Virginia. Petitioners filed a joint Federal income tax return on the cash method of accounting for the year 1967 either with the director of internal revenue for the district of Virginia, or the Internal Revenue Service Center, Philadelphia, Pennsylvania. 3 During the taxable year ended December 31, 1967, the petitioners' principal activity was maintaining and operating a 700-acre horse farm which they have operated for a number of years. Their activities involved the purchase, sale, breeding, and training of thoroughbred race horses. The "thoroughbred" race horse, as distinguished from other kinds of horses which are trained and bred in this country, is a generic term used to describe a particular breed of horse whose ancestry can be traced in the stud books maintained by the thoroughbred registers in the countries where thoroughbred racing takes place.Petitioners enter their horses in races at established tracks, racing under their own colors, in the name of Newstead *96 Farm or of the petitioners. During the month of December of each year the "New Market Sales," the largest international auction sale of thoroughbred race horses in the world, are held in England. Buyers come from all over the world to purchase horses there. In the summer of 1967, petitioners 4 received a telephone call from an agent in England advising them that a famous English thoroughbred racing filly [1] called "Bamboozle" was for sale. Bamboozle was owned by E. Cooper Bland and was perhaps the best racing filly in England at the time. Of the 11 races she had run in England during 1967, she had 6 "firsts," 2 "seconds," and 1 "fourth." Petitioners went to England that fall for the specific purpose of inspecting "Bamboozle" and possibly purchasing her at the New Market Sales. They decided to purchase her on the very first day they arrived in England. The purchase was negotiated privately before the sales started and was consummated on December 4, 1967, for the price of $96,306.66. Bamboozle was a 3-year old at the time of purchase, having been foaled in 1964. 5 Subsequent to the purchase, petitioners *97 left Bamboozle in England for further racing. In May of 1968, Bamboozle won 3,270 English pounds for finishing second in the Coronation Cup Stakes. She was later sent to France where she was raced with some success. Bamboozle was registered with The Jockey Club in the United States on January 7, 1969. Under the Rules and Regulations of The Jockey Club, which govern thoroughbred racing in the United States (Rule 5), "The age of a horse is reckoned as beginning on the first of January in the year in which he is foaled." This rule, in effect, controls the racing life of a race horse. It determines its eligibility to race in those races confined to 2-year olds, 3-year olds, and other races. Based on The Jockey Club age rules, the peak racing years of a thoroughbred race horse are the 2nd, 3rd, and 4th years of his life. As a general rule, stallions and mares, or fillies, do not race beyond the age of 4 years. After that age, the fillies are generally converted into brood mares and the stallions are put to stud. 6 Petitioners had been depreciating race horses owned by them for many years. On their 1967 income tax return, petitioners claimed a depreciation deduction for Bamboozle *98 for 6 months of 1967, using a 200 percent declining balance method and a 3-year useful life. The parties now agree that the proper method of depreciation is 150 percent declining balance, with the useful life still 3 years. However, petitioners now claim the allowance for depreciation of Bamboozle for the full year 1967. In computing the depreciation for their horses on their books and records, and in their income tax returns, petitioners used the separate item accounts system, as opposed to the multiple asset accounts system. Petitioners also used the separate accounts system for their other farm assets. The depreciation deductions claimed for some of these other farm assets were based on the number of months they were held by petitioners during the taxable year. 7 OPINION The petitioners contend that since under The Jockey Club Rules the filly, Bamboozle, is deemed to be one year older as of January 1, 1968, they are entitled to deduct depreciation for the full year 1967, notwithstanding the fact that the filly was not acquired by petitioners until December 4 of that year. In support of such claim, petitioner relies on Reineman et al. v. U.S., 61-1 U.S.T.C. par. 9386 (D. Ill. 1961), *99 affirmed on other grounds, 301 F.2d 267 (C.A. 7, 1962). Regardless of the views expressed by the district court in that case, which was decided and affirmed on other grounds, petitioners' position is wholly incompatible with the statute. [2]
Section 167(a) [3] provides that there shall be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear, including a reasonable 8 allowance for obsolesence, of property used in the trade or business. The parties are in agreement on the fact that Bamboozle constitutes property used in petitioners' trade or business and that 3 years is the proper period of time over which the depreciation is to be computed. They are also in accord as to the depreciation base to be used. The sole dispute relates to the amount of depreciation allowable in the calendar year 1967. Notwithstanding that Bamboozle was owned by petitioners and could have been used in petitioners' trade or *100 business for less than 1/12th of the calendar year, petitioners claim that they are entitled to a full year's depreciation because of the aging rules adopted by The Jockey Club. In our opinion, this completely disregards the statutory requirement of section 167 that the depreciation deduction must be a "reasonable allowance." The purpose of the depreciation allowance is to correlate the exhaustion of the asset with the realization of the income resulting from the use of the asset in the taxpayer's trade or business. Where the taxpayer has only owned the property for a fraction of the 9 taxable year any resulting income likewise would be limited to a fractional amount. The purpose of the statute would be defeated if we were to allow petitioners to take 12 months' depreciation for Bamboozle. This is especially so in our case where petitioners did not even race Bamboozle between the date of purchase and the end of the taxable year. To permit a full deduction under these circumstances would result in a distortion of petitioners' income in that 11/12ths of the obsolescence attributable to those rules had already occurred before petitioners purchased Bamboozle and the effect of *101 The Jockey Club aging rules must necessarily have been reflected in the purchase price. [4]
Furthermore, in computing the allowable depreciation with respect to their horses, petitioners have not adopted a composite basis of depreciation nor have they 10 elected, as is permitted by the respondent, to take a full year's depreciation for property held more than 6 months during the taxable year and to claim no depreciation for property held less than 6 months. Instead, the petitioners have chosen the separate items account system. Under such circumstances, the practice of prorating the allowance for depreciation based on when an individual asset is placed in service is specifically mandated under section 1.167(a)-10(b), [5] Income Tax Regs., and has been sustained by this Court in the 11 case of other assets. *102 St. Louis Malleable Casting Co., 9 B.T.A. 110 (1927); National Map Co., 17 B.T.A. 1098 (1929); William R. Collins, 18 T.C. 99 (1952), affirmed 203 F.2d 565 (C.A. 6, 1953); Herbert R. Swofford, 49 T.C. 128 (1967). Indeed, petitioners have regularly employed this very practice in computing the allowable depreciation with respect to their other farm assets. We find no reason for making an exception predicated on the fact that The Jockey Club Rules state that every horse becomes 1 year older on January 1st. *103 In accordance with the foregoing, we hold that petitioners are not entitled to a full year's depreciation deduction for Bamboozle in 1967 but instead are limited to an allowance based on the time Bamboozle was actually placed in petitioners' service, which on our facts was December 4, 1967. Decision will be entered under Rule 50. Footnotes
1. A filly is a female horse under 5 years of age. ↩
2. Respondent also claims that the Reineman case is distinguishable on the facts, but we need not decide that point. ↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
4. It is well settled that a taxpayer is entitled to claim depreciation for the period of the taxable year up to the date of sale. Fribourg Nav. Co. v. Commissioner, 383 U.S. 272↩ [1966]. Accordingly, if the petitioners' position were correct, the depreciation claimed on the same asset by a seller and by a purchaser would cover overlapping periods. 5. Section 1.167(a)-10. When depreciation deduction is allowable. * * * (b) The period for depreciation of an asset shall begin when the asset placed in service and shall end when the asset is retired from service. A proportionate part of one year's depreciation is allowable for that part of the first and last year during which the asset was in service. However, in the case of a multiple asset account, the amount of depreciation may be determined by using what is commonly described as an "averaging convention", that is, by using an assumed timing of additions and retirements * * * An averaging convention, if used, must be consistently followed as to the account or accounts for which it is adopted, and must be applied to both additions and retirements. In any year in which an averaging convention substantially distorts the depreciation allowance for the taxable year, it may not be used. ↩