DONALD R. DIGBY AND LYDIA DIGBY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1352–92, 26770–92.     Filed September 7, 1994.

*Michael J. Shidler,* for petitioners.
*Timothy P. Brynteson,* for respondent.

GERBER, *Judge:* Respondent determined deficiencies in these consolidated[1] cases in the amounts of $112,614, $53,103, and $37,731 for petitioners' 1987, 1988, and 1989 taxable years, respectively. The parties have resolved all substantive issues determined in the notices of deficiency and have agreed that there is a $39,346 deficiency due from petitioners for 1988 and a $22,947 overpayment due to petitioners for 1989. With respect to the 1987 tax year, the parties agree that there would be a $21,779 income tax deficiency due from petitioners but for the resolution of a procedural issue which remains in dispute. That issue is whether an unnecessary examination or second inspection of petitioners' records, within the meaning of section 7605(b),[2] was conducted by respondent's agent for the 1987 taxable year. If we decide that an unnecessary examination or second inspection occurred, we must consider what constitutes an appropriate remedy for a section 7605(b) violation and whether it should be employed in this case.

## FINDINGS OF FACT[3]

Petitioners resided in Englewood, Colorado, at the time their petitions were filed in these consolidated cases. Revenue Agent William Burlage (Agent Burlage) opened an audit examination of petitioners' 1987 taxable year early in 1989. Petitioners were selected for audit because of a flow-through item from Navajo Shippers, Inc. (Navajo), a related corporate entity which had been examined first. In addition to the flow-through item, other issues were pursued by Agent Burlage.

As of early 1989 petitioners' 1987 subchapter S corporate return for Digby Leasing (Leasing) had not been filed and

---

[1] Respondent issued two notices of deficiency to petitioners—one for 1987 and the other for 1988 and 1989. The parties' motion to consolidate the resulting cases for purposes of trial, briefing, and opinion was granted.

[2] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3] The parties have stipulated facts and documents that are incorporated by this reference.

petitioners' 1987 return did not contain an entry (either a gain or a loss) attributable to Leasing. After conversations with Daniel Johnson, petitioners' certified public accountant/representative (Mr. Johnson), Agent Burlage allowed $103,710 as a flow-through loss to petitioners from Leasing for the 1987 taxable year. Agent Burlage was shown a draft Schedule K–1 and memorandum summarizing the loan documents of Leasing, both of which had been prepared by Mr. Johnson. Agent Burlage reviewed substantial amounts of records and documents, but there is no indication that he personally reviewed Leasing's loan documents in connection with his audit of the 1987 tax year.

Agent Burlage also considered issues involving other entities related to petitioners, including partnerships and corporations. Agent Burlage reviewed petitioners' individual records, including the general ledger. The 1987 audit of petitioners' return was extensive and included multiple matters involving Schedules C, D, and E and computational matters. The examination of all the related entities was also extensive, and the audit of all entities, including petitioners, extended over a 1-year period. Agent Burlage periodically spent several weeks at a time working on the examination. Agent Burlage spent from 100 to 200 hours of his time working specifically on petitioners' 1987 return. By means of a letter, dated May 14, 1990, Agent Burlage's report of audit adjustments and an agreement to permit assessment (Form 870) were forwarded to petitioners. For 1987, the report reflected an additional income tax liability of $45,191 and an $18,998 addition to tax, all of which petitioners agreed could be assessed by means of executing a Form 870.

On August 29, 1990, respondent received a Form 1040X for petitioners' 1988 taxable year, and it was assigned to Revenue Agent Timothy Chase (Agent Chase) for examination during March 1991. The Form 1040X contained three major changes from the original 1988 Form 1040 income tax return. It also contained several computational adjustments which flowed from the three major changes. The three major changes included: (1) $188,125 of increased wages from Navajo; (2) $406,997 of pass-through loss from Leasing; and (3) $79,035 in additional Schedule C business deductions. In order to support the claimed loss from Leasing, petitioner explained on the Form 1040X that Leasing's debt should be

considered for purposes of petitioners' adjusted basis, because (1) Leasing was thinly capitalized, (2) the creditors looked to the shareholder primarily for repayment, and (3) the creditors would not have advanced the funds to the corporation alone. Petitioner was a guarantor of Leasing's debt. Petitioners pointed out that the case law on whether guarantees could be considered by subchapter S shareholders as basis for purposes of section 1366(d)(1) was varied, and several cases were cited. Petitioners also provided an explanation regarding the "passive activity" requirement of section 469 and pertinent regulations.

At the first meeting with petitioners' representative, Agent Chase was advised that petitioners' 1987 return had already been examined and another revenue agent had previously addressed some of the same issues as were being pursued for the 1988 tax year. After considering some of the aspects of the Leasing transactions for 1988, Agent Chase realized that there might be insufficient basis for petitioners to claim a loss for 1988 and for prior years, including 1987. Agent Chase called Agent Burlage and discussed the matter, being aware that the period for assessment of a 1987 deficiency had not expired. Around June 20, 1991, Agent Chase requested a copy of Agent Burlage's 1987 audit report, and it was received from his local office on August 27, 1991. Agent Chase also obtained, from internal sources, petitioners' individual 1987 income tax return and the related administrative files and determined that there would also be a proposed income tax deficiency for petitioners' 1987 tax year.

The records used during the audit of petitioners' 1988 tax year also reflected a deficiency for 1987 with respect to the basis issue regarding Leasing. When the expiration of the 1987 assessment period was approaching, Agent Chase, after consulting with and obtaining the agreement of his manager, decided to pursue the basis question with respect to petitioners' 1987 tax year. Written notice of a second examination or inspection was not sent or provided to petitioners prior to the determination and issuance of the notice of deficiency for 1987. Around mid-September 1991, Agent Chase orally advised Mr. Johnson, petitioners' representative, of the reexamination of the 1987 year with respect to the losses claimed in connection with Leasing. Through Mr. Johnson, petitioners were asked to extend the 1987 assessment period.

Petitioners refused to extend the period, and respondent issued a notice of deficiency for the 1987 tax year.

OPINION

Section 7605(b) provides that

No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

The Supreme Court, after a review of the legislative history, interpreted the purpose of section 7605(b) as being congressional recognition of "a need for a curb on the investigating powers of low-echelon revenue agents, and considered that it met this need simply and fully by requiring such agents to clear any repetitive examination with a superior." *United States v. Powell,* 379 U.S. 48, 55–56 (1964); 61 Cong. Rec. 5855 (Sept. 28, 1921). The *Powell* case involved the enforcement of a summons to appear before a special agent and produce for reexamination certain corporate records, on the ground that suspected fraud would reopen the expired 3-year period of limitations on assessment and collection. Section 7605(b) was considered in that context to determine whether that section, either alone or in conjunction with others, placed a probable cause standard or other restrictions on the Commissioner's agents before a tax year may be reexamined. The Supreme Court held, with respect to section 7605(b) that, generally, "no severe restriction was intended", and regarding unnecessary examinations, courts are not required "to oversee the Commissioner's determinations to investigate." *United States v. Powell, supra* at 54, 56.

With this background we consider petitioners' contention that respondent has violated the requirements of section 7605(b). Petitioners' 1987 tax return was examined and respondent's agent allowed a subchapter S corporation pass-through loss. That loss was allowed based upon a draft Schedule K–1 and a memorandum summarizing Leasing's loan documents, all of which were provided by petitioners' representative. Petitioners' 1988 return was examined by another of respondent's agents after the examination for 1987 had been concluded. For 1988 petitioners had also

claimed a pass-through loss from Leasing, and the second agent reviewed Leasing's loan documents to consider whether petitioners had sufficient basis to claim the loss for 1988. After his review, the agent determined that basis was insufficient for 1988 and 1987. Based upon this information and because petitioners would not extend the assessment period for 1987, the agent, after obtaining approval from his supervisor, included the 1987 tax year in the examination. The loss claimed through Leasing for 1987, which the first agent had allowed in the initial examination of 1987, was then disallowed by means of a notice of deficiency, which was petitioned to this Court. Petitioners, through their representative, were orally advised that the adjustment was being considered by the second agent for 1987, but no written notice, as contemplated in section 7605(b), was provided to petitioners for the 1987 year.

Under the statute (1) a "taxpayer shall [not] be subjected to unnecessary examination or investigations, and [2] only one inspection of a taxpayer's books of account shall be made for each taxable year". Sec. 7605(b). Although these two limitations may practically overlap, they are separately stated. Further, with respect to a second inspection of a taxpayer's books for the same taxable year, respondent's agent is required to obtain approval from superiors, and notice must be given to the taxpayer.

We first consider whether there was an unnecessary examination with respect to Agent Chase's consideration of petitioners' 1987 tax year. There can be no doubt that Agent Chase's inquiry, no matter how brief and derivative of or tangential to the 1988 examination, resulted in a second examination of petitioners' 1987 taxable year. See, e.g., *United States v. House,* 524 F.2d 1035, 1043–1044 (3d Cir. 1975); *Ballantine v. Commissioner,* 74 T.C. 516, 523–524 (1980).

The circumstances of this case support our holding that respondent's second examination of petitioner's 1987 tax year could not be denominated "unnecessary" within the meaning of section 7605(b). Although the parties signed a Form 870 to permit the assessment of additional 1987 tax liability for petitioners based on Agent Burlage's audit, that, by itself, would not prohibit respondent from seeking additional tax for 1987 based on information obtained other than from

Agent Burlage's audit.[4] There is no express limit on the number of examinations that may be pursued by respondent for the same taxable year.[5] Finally, we note that but for this procedural controversy, petitioners have agreed that they would be liable for a $21,779 income tax deficiency. We therefore proceed to consider whether there was a second inspection of petitioners' books for the same taxable year.

Petitioners' argument that respondent has violated section 7605(b) is grounded on respondent's failure to notify them of a second inspection of their records. In this regard, section 7605(b) requires notice only if there is a second inspection of petitioners' records for the same taxable year. It should also be noted that section 7605(b) does not prohibit second or subsequent inspections. Respondent is permitted to review the same records more than once during the same inspection and continuous examination of the same taxable year. *United States v. Silvestain,* 668 F.2d 1161, 1163–1164 (10th Cir. 1982), and cases cited therein. We have not focused upon the inspection of petitioners' tax returns by respondent's agents because that has been held not to constitute an "inspection" of a taxpayer's "books of account". *Curtis v. Commissioner,* 84 T.C. 1349, 1350 (1985), and cases cited therein.

If the Commissioner's agent seeks third party records in order to determine whether there was a deficiency in a taxable year that has already been examined, notice to the taxpayer would not be required. See *United States v. MacKay,* 608 F.2d 830, 834 (10th Cir. 1979); *United States v. Lask,* 703 F.2d 293, 297 (8th Cir. 1983); *Hubner v. Tucker,* 245 F.2d 35, 38–39 (9th Cir. 1957). This same principle has also been held applicable where the Commissioner's agent inspects the records of a related entity, such as a corporation or partnership. See *United States v. Howard,* 360 F.2d 373

---

[4] In this case petitioners executed a Form 870 (Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment), which is not a binding closing agreement within the meaning of sec. 7121. The Form 870 has been found to be merely a waiver of statutory notice requirements, *Consolidated Freightways, Inc. v. United States,* 223 Ct. Cl. 443, 620 F.2d 862, 868 (1980), and no bar to further examination or determinations by the Commissioner, *Maloney v. Commissioner,* T.C. Memo. 1986–91.

[5] It should be noted that respondent, within her Internal Revenue Manual and through pronouncements, has established procedures for reopening a closed case. That, however, is not the focus of the controversy between the parties here. Even if it were, those procedures have been held to be discretionary and not mandatory. The Commissioner may issue a valid notice of deficiency in spite of failing to follow internal reopening procedures. See *Pleasanton Gravel Co. v. Commissioner,* 64 T.C. 510, 529 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978); *Collins v. Commissioner,* 61 T.C. 693, 701 (1974), and cases cited therein.

(3d Cir. 1966); *Geurkink v. United States,* 354 F.2d 629 (7th Cir. 1965); *Curtis v. Commissioner,* 84 T.C. at 1351–1353. But see *Moloney v. United States,* 521 F.2d 491 (6th Cir. 1975). Consequently, to the extent the records reexamined herein were those of Leasing; i.e., the Schedule K–1, loan documents, etc., there may have been no second inspection of petitioners' books of account.

The situation here is one where Agent Chase did not request petitioners' records for 1987 (the year already examined). Agent Chase requested documents concerning the 1988 year. After obtaining the records for 1988, it became apparent to Agent Chase that petitioners may have had insufficient basis for claiming losses from Leasing. This is not the same type of situation decided in *Hough v. Commissioner,* 882 F.2d 1271, 1275–1276 (7th Cir. 1989), affg. T.C. Memo. 1986–229, or *Pleasanton Gravel Co. v. Commissioner,* 64 T.C. 510 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978). In those cases it was held that section 7605(b) did not apply where the adjustment to an already "inspected" year was based upon information already in the Commissioner's possession. The circumstances we consider differ in that the same specific records were or would have to be inspected no matter whether 1987 or 1988 was being examined. Our circumstances are nevertheless substantially similar to the *Hough* and *Pleasanton Gravel Co.* cases because the inspection for 1988 resulted in respondent's being in possession of the information necessary to make a determination for 1988 and/or 1987. In other words respondent did not ask for records to support the loss claimed for 1987. We must decide whether there is a meaningful distinction in that difference.

Here, the basis issue happened to be a continuing one, and it affected petitioners' 1987 and 1988 taxable years. The unique circumstance in this case is that in order for respondent's agent to review the claimed loss, he would necessarily consider the same records for 1988 and 1987. The precise question that arises here is whether inspecting records for a later year which results in adjustments for the earlier and already examined year constitutes a second inspection for the earlier year.[6] Section 7605(b) concerns a second inspection

---

[6] It is noted that we do not have a situation where respondent's agent attempted to obtain already inspected records under the pretense or guise of the examination of another year. We have found here that respondent's examination was initiated by petitioners' amended 1988 re-

for the same taxable year. Accordingly, where information is obtained by means of an examination of a later or different taxable year that affects an already examined year, it may not be a second inspection within the meaning of section 7605(b), even though the same records are inspected.

The factual context of this case varies significantly from the one set forth in *Reineman v. United States,* 301 F.2d 267 (7th Cir. 1962), a case upon which petitioners place great reliance. In that case, the Court of Appeals agreed with the trial court that a second inspection had occurred. Essentially, it was factually found that one of the Commissioner's agents inspected records that had been inspected by another agent for the same taxable year. The *Reineman* facts coincide with this case in that both cases involve the examination of a later year where a second agent proposes an adjustment, without written notice, to an already examined earlier year. The major difference is that in *Reineman* the records inspected were exclusive to the earlier, already examined year,[7] whereas in this case, because of the issue's continuing nature, the records underlying the particular item in question would have been the same no matter which of the 2 taxable years was examined.

In reaching our conclusion here, we are cognizant that "Income taxes are levied on an annual [periodic] basis. Each year [period] is the origin of a new liability and of a separate cause of action." *Commissioner v. Sunnen,* 333 U.S. 591, 598 (1948). The notion of an annualized tax accounting period has long been recognized and respected by the courts. *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359 (1931). Our focus upon the records here as 1988 records, even though the same records were the basis for 1987 income tax reporting, comports with and recognizes that each tax year or period is a separate and distinct matter. To hold otherwise would sub-

---

turn claiming additional loss for 1988.

[7] In *Reineman v. United States,* 301 F.2d 267 (7th Cir. 1962), the taxpayers deducted the entire purchase price of horses in 1954, the year of purchase, as depreciation of property used in their trade or business. The depreciation deduction only appeared on the taxpayers' 1954 return and accordingly would have only been part of their 1954 records. The agent, who was examining the taxpayers' 1955 tax year, made an adjustment concerning the 1954 depreciation of the horses. The Government argued that the agent was able to make the adjustment without inspecting the 1954 records. The taxpayer argued that the agent, because of certain details in his report, could not have made the proposed adjustment without inspecting records unique to 1954. The Court of Appeals affirmed the trial court's finding that the Government agent conducted a second inspection of the taxpayers' 1954 records without written notice as required in sec. 7605(b).

ject the parties to a labyrinth of complexity in any later year examination of the same taxpayer. In order to determine whether notice of a second inspection is necessary, the parties would first have to review all of the records needed for the current year's examination and determine whether any of them had been inspected in connection with a prior year's examination. This was not the purpose or intended result of section 7605(b).

The parties here have quibbled over whether the records inspected by Agent Burlage were exactly the same as those inspected by Agent Chase. Respondent contends that Agent Burlage looked only at a draft Schedule K–1 and petitioners' representative's summary of Leasing's loans, whereas Agent Chase looked at the actual loan documents. Petitioners argue that both agents looked at the same records. As a matter of law and policy, we do not see any meaningful distinction to be made as to which part of the records is inspected, unless, of course, the claim is that one of the agents did not look at petitioners' records at all and that a second inspection could not have occurred. See *United States v. Howard,* 360 F.2d 373 (3d Cir. 1966); *Geurkink v. United States,* 354 F.2d 629 (7th Cir. 1965); *Curtis v. Commissioner,* 84 T.C. 1349 (1985). The congressional focus of section 7605(b) is to curb the investigating powers of low-echelon revenue agents regarding second inspections of records or unnecessary examinations and to require notice and/or the approval of the agent's superiors. Thus, for example, if the first agent sampled only a few book entries as being typical of thousands and the second agent reviewed every one of the entries, both instances would be inspections of the books within the meaning of section 7605(b).

It is clear that Congress did not intend to restrict the Commissioner from auditing subsequent years' transactions originating from the same records, even if those records had been inspected in connection with the audit of an earlier year. Although no court has previously addressed this particular variation regarding section 7605(b), we believe that the statutory meaning and intent is clear, and the circumstances here are not a second inspection of petitioners' 1987 records.[8] Accordingly, respondent was not required to

---

[8] Respondent also argued that, if this was a second inspection, petitioners, through their rep-

provide written notice to petitioners of the intent to conduct a second inspection.

Our holdings that this was not an "unnecessary examination" and that Agent Chase did not conduct a second inspection of petitioners' 1987 income tax records make it unnecessary to consider what relief, if any, would be appropriate for failure to comply with section 7605(b).

To reflect the foregoing and due to concessions of the parties,

*Decisions will be entered under Rule 155.*

resentative, consented to the inspection. Along those same lines, respondent argued that the relief contemplated in sec. 7605(b) is contemporaneous with the second attempt to inspect and would have no relevance after the fact. In other words, respondent argued that sec. 7605(b) would usually be argued in the context of a summons enforcement proceeding. Because we hold that there was no second examination, it is unnecessary to address those arguments.