T.C. Memo. 2020-23

UNITED STATES TAX COURT

RICHARD ESSNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 7013-17, 1099-18.[1]          Filed February 12, 2020.

Richard Essner, pro se.

<u>Mark A. Nelson</u> and <u>Sarah A. Herson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined income tax deficiencies of

$117,265 and $101,750 and accuracy-related penalties under section 6662(a)[2] of

_____

[1]At trial the Court consolidated these cases for purposes of trial and opinion.

[2]All section references are to the Internal Revenue Code in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and

(continued...)

**[\*2]** $23,453 and $20,350 for petitioner's 2014 and 2015 tax years, respectively.

After stipulations, the remaining issues for decision are whether: (1) petitioner failed to report distributions from an inherited individual retirement account (IRA) as income for 2014 and 2015, (2) respondent subjected petitioner to a duplicative inspection of his books and records relating to his 2014 tax year in violation of section 7605(b), and (3) petitioner is liable for the accuracy-related penalty under section 6662(a) for tax year 2015.[3]

## FINDINGS OF FACT

Petitioner resided in California when he filed his petitions in these consolidated cases. Petitioner is a cancer surgeon by training and profession. In 2013 petitioner's mother died, and he inherited an IRA that she had inherited from her late husband, petitioner's father.

After petitioner inherited the IRA, he took distributions from it in both 2014 and 2015. Specifically, petitioner received distributions of $360,800 and $148,084 in 2014 and 2015, respectively. Before petitioner received the first distribution in 2014, he researched the tax implications of an inherited IRA on the

[2](...continued)
Procedure.

[3]Respondent has conceded the accuracy-related penalty under sec. 6662(a) for tax year 2014.

[*3] Internal Revenue Service's (IRS) website, and he came to the conclusion that he would not owe tax on the distributions. Petitioner engaged a return preparer for his 2014 and 2015 returns, but he did not inform his return preparer that he had received IRA distributions in 2014 and 2015 and did not ask for guidance from his return preparer on the tax treatment of such transactions. Petitioner did not report a distribution as income on his tax return for either year. However, respondent and petitioner received Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting IRA distributions to petitioner of $360,800 and $148,084 in 2014 and 2015, respectively.

On March 21, 2016, the Commissioner's Automated Underreporting (AUR) program generated a notice informing petitioner that it had detected a discrepancy between records of payments made to him and the amount of taxable income he reported on his 2014 income tax return. The notice provided petitioner with the opportunity to agree to the proposed changes or to provide more information regarding the discrepancy identified by the AUR program. On May 31, 2016, the AUR program generated another notice, again noting the discrepancy and providing petitioner with the opportunity to provide substantiating records for his position. On June 28, 2016, petitioner responded to both notices, stating in a

[*4] handwritten note that he did not agree with the proposed changes. On January 3, 2017, the AUR program generated a notice of deficiency for tax year 2014 (2014 notice), from which petitioner timely petitioned this Court for redetermination of his 2014 deficiency at docket No. 7013-17.

Were this the only interaction petitioner had with the IRS regarding his 2014 tax year, this would be a straightforward case; but it is not. Concurrently with the review by the AUR program, petitioner dealt with an individually directed examination of his 2014 and 2015 tax years. Specifically, on October 20, 2016, Tax Compliance Officer Hareshkumar Joshi (Officer Joshi) sent petitioner a Letter 3572, informing petitioner that his 2014 tax return had been selected for examination[4] and requesting that petitioner provide copies of his 2013 through 2015 income tax returns. Officer Joshi's examination focused on various reported travel, meal, and legal expenses but did not mention the IRA distribution discrepancy that the AUR program had already identified.

---

[4]Generally, this Court does not look behind the notice of deficiency to see what occurred during the course of an examination. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Petitioner's sec. 7605(b) argument opens a narrow exception to that rule, however, so facts relating to the examination for petitioner's 2014 tax year--and only his 2014 tax year--are material to these cases. The record does not make clear precisely when Officer Joshi's examination for petitioner's tax year 2015 began but that is not material to our analysis for petitioner's 2015 tax year because he does not argue that respondent violated sec. 7605(b) with respect to tax year 2015.

[*5] Because Officer Joshi did not know that the AUR program had issued petitioner a notice of deficiency for tax year 2014, he continued his examination of petitioner's 2014 income tax returns after the date of the 2014 notice. Specifically, Officer Joshi sent petitioner a Letter 915 on January 10, 2017, attaching his examination report and proposed adjustments relating to petitioner's 2014 tax year. On the basis of additional information petitioner provided, Officer Joshi revised his proposed adjustments for petitioner's tax year 2014 and, on February 14, 2017, reflected those adjustments in a revised report. Neither the original nor the revised report included an adjustment relating to petitioner's IRA distribution in 2014. In response, on March 10, 2017, petitioner sent a letter to Officer Joshi requesting that he provide a copy of the original report to confirm that the IRA distribution petitioner received in 2014 was not taxable.

As noted above, however, on March 27, 2017, petitioner timely petitioned this Court in response to the notice of deficiency generated by the AUR program on January 3, 2017. In his petition, petitioner noted the ongoing examination and negotiation with Officer Joshi relating to his 2014 tax year.

On October 23, 2017, respondent issued a notice of deficiency to petitioner relating to his tax year 2015 (2015 notice), determining a deficiency of $101,750

**[*6]** and an accuracy-related penalty under section 6662(a) of $20,350. Petitioner timely petitioned this Court in response to the 2015 notice.

OPINION

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer generally bears the burden of proving that those determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). When a case is appealable to the U.S. Court of Appeals for the Ninth Circuit, as these cases appear to be absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), the Commissioner's determination that a taxpayer underreported income is presumed correct only if it is supported by a minimal factual foundation, see Palmer v. United States, 116 F.3d 1309, 1313 (9th Cir. 1997). Once the determination is so supported, the burden shifts to the taxpayer to prove that the determination is incorrect. Id.

I.    Underreported Income

Section 61(a) defines gross income as "all income from whatever source derived", including gross income from pensions. See sec. 61(a)(11). Respondent contends that he received information returns reporting IRA distributions to petitioner in 2014 and 2015 from petitioner's inherited IRA. Respondent also contends that petitioner did not report a distribution as income for either year and

**[\*7]** that he has failed to prove that any part of the retirement distributions he received was excludible from income.

At trial petitioner did not contest that he received retirement distributions in the amounts shown on the information returns. Rather, his position is that a portion of each distribution is not taxable because it represents his late father's original investment in the account. At trial petitioner stated that he had contacted the financial institutions that had held the IRA--TD Ameritrade and Fidelity-- seeking documentation to determine the portion that represented his late father's original investment. Unfortunately, neither institution had the records he sought. At trial he conceded that he could not substantiate that any portion of the distributions represented a return of his late father's original investment.

We find credible petitioner's statement at trial that he attempted to find records that could substantiate his position, and we sympathize with him for the dilemma in which he found himself when he inherited his late father's IRA. But petitioner bears the burden of proving respondent's determinations to be incorrect, and he has not.[5] Therefore, we must sustain respondent's determinations.

---

[5]Although there was a failure of proof in these cases, petitioner's general contentions, construed broadly, are not unfounded. For example, he may have been entitled to exclude some portion of these distributions from income if he could have proven a specific amount of "[n]ondeductible contributions to * * *

(continued...)

**[\*8]** II.     Section 7605(b)

Petitioner also argues that respondent should be barred from assessing the proposed deficiency for 2014 because he violated section 7605(b) by conducting a second inspection of petitioner's books and records for 2014.[6]

Section 7605(b) provides: "No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." As this Court has noted elsewhere, "[a]lthough these two limitations may practically overlap, they are separately stated." Digby v. Commissioner, 103 T.C. 441, 446 (1994). We therefore

---

[5](...continued)
[the account] minus any prior withdrawals or distributions of nondeductible contributions". Hoang v. Commissioner, T.C. Memo. 2006-47, 2006 WL 695362, at *3; see also Estate of Kahn v. Commissioner, 125 T.C. 227, 231-232 (2005) (citing secs. 408(d)(1) and 691(a)(1)(B)). He could not, however, and has failed to carry his burden of proof as to the issue.

[6]Respondent argues as a threshold matter that petitioner failed to raise this issue in his pleadings and so he is precluded from raising it now. See Rule 34(b)(4). Because petitioner is self-represented, and because the parties appear to have tried the sec. 7605(b) issue by consent, we address the sec. 7605(b) issue. See Rule 41(b)(1).

[*9] consider whether this examination was either "unnecessary" or involved an unauthorized second inspection of petitioner's books and records.

In doing so we note that the Supreme Court has explained that section 7605(b) imposes "no severe restriction" on the Commissioner's power to investigate taxpayers. United States v. Powell, 379 U.S. 48, 54 (1964). Accordingly, the provision is read narrowly. See De Masters v. Arend, 313 F.2d 79, 85-86 (9th Cir. 1963). For instance, this Court has stated that "mere communication with the taxpayer does not fall within the scope of" section 7605(b). Seidel v. Commissioner, T.C. Memo. 2005-67, 2005 WL 730077, at *13. Additionally, section 7605(b) does not limit the Commissioner's ability to assemble and consult third-party records related to a taxpayer's tax liability. See Hubner v. Tucker, 245 F.2d 35, 38-39 (9th Cir. 1957). Nor does it limit the Commissioner's ability to review already-filed tax returns in his possession. See Estate of Sower v. Commissioner, 149 T.C. 279, 289 (2017).

Petitioner contends that because both the AUR program and Officer Joshi examined his 2014 tax return concurrently, respondent violated section 7605(b). In support petitioner introduced his correspondence with both the AUR program and Officer Joshi. Petitioner contends that this correspondence shows that Officer Joshi's examination was unnecessary (given that it extended past the date when

[*10] the AUR program generated the notice of deficiency with respect to 2014) and that it required an unauthorized second inspection of petitioner's books and records (given that Officer Joshi's examination ran parallel to and appears to have come to positions at odds with the AUR adjustments that underlie the IRS' position taken in the notice).

Respondent counters that he issued the 2014 notice on the basis of the AUR program's review of petitioner's 2014 return--not Officer Joshi's individual examination. Moreover, respondent contends that the AUR program's review was based entirely on third-party information returns and petitioner's already-filed 2014 income tax return--in other words, without reference to petitioner's books and records. Respondent argues that no examination took place during AUR program review, so there was neither an unnecessary examination nor a duplicative inspection of petitioner's records. Accordingly, respondent contends that section 7605(b) is thereby inapplicable.

At the outset, we note that petitioner's interactions with the IRS--both through the AUR program and his correspondence with Officer Joshi--would be confusing to an ordinary taxpayer. Various offices of the IRS contacted petitioner without coordination, without clarity as to what the other parts were doing, and without providing petitioner a clear explanation as to why the IRS was speaking

[*11] out of many mouths. A taxpayer ought not to have been subjected to such a byzantine examination. However, we are not empowered to police what ought to have occurred in an examination; we are limited to considering whether section 7605(b), as written, was violated. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).

Under section 7605(b), the AUR program's matching of third-party-reported payment information against petitioner's already-filed 2014 tax return is not an examination of petitioner's records. See Hubner, 245 F.2d at 38-39. Therefore, no second examination of petitioner's books and records could have occurred, regardless of the concurrent actions of Officer Joshi. Additionally, as we have found above, petitioner failed to properly report income from the 2014 distribution from the retirement account, and he has conceded other adjustments for tax year 2014. Therefore, respondent's examination of petitioner's 2014 tax return was not unnecessary. While we understand petitioner's frustration with the process of this examination, we cannot say that a failure to communicate and coordinate within the IRS--standing alone--violates section 7605(b). We therefore agree with respondent.

[*12] III.     Section 6662(a) Accuracy-Related Penalty

In the 2015 notice respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a).  Section 6662(a) authorizes the Commissioner to impose a 20% penalty on an underpayment of tax attributable to, among other things, any substantial understatement of income tax within the meaning of section 6662(b)(2).  A substantial understatement means an understatement that exceeds the greater of $5,000 or 10% of the income tax required to be shown on the return for the taxable year.  Sec. 6662(d)(1)(A).  A taxpayer may be excused from this penalty if the taxpayer can show that there was reasonable cause for and that the taxpayer acted in good faith with regard to the underpayment.  Sec. 6664(c)(1).  Whether a taxpayer acted in good faith and with reasonable cause is determined on the basis of the totality of the facts and circumstances, including "the experience, knowledge, and education of the taxpayer."  Sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner bears the burden of production as to accuracy-related penalties, which he may satisfy by providing sufficient evidence to indicate that it is appropriate to impose the relevant penalty.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  As part of his burden of production, the Commissioner must also prove that he complied with the supervisory approval

[*13] requirement of section 6751(b)(1). Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Respondent determined that petitioner understated his 2015 income tax by $98,962, which is greater than 10% of the income tax that should have been reported, which is greater than $5,000. Before trial the parties stipulated a copy of the Civil Penalty Approval Form, signed by Officer Joshi's supervisor on July 25, 2017. The parties also stipulated that the 2015 notice contained the first formal assertion of a penalty under section 6662(a) to petitioner, and it was issued on October 23, 2017. Respondent has thereby met his burden of production with respect to the accuracy-related penalty for tax year 2015. Moreover, we have sustained respondent's determinations regarding the IRA distribution petitioner received in 2015, and petitioner has conceded the other adjustments in the 2015 notice. Accordingly, petitioner is liable for the accuracy-related penalty unless he can prove that he acted with reasonable cause and in good faith with respect to his underpayment. See sec. 6664(c)(1).

In 2015 petitioner received a large distribution from his inherited IRA. Petitioner sought to determine the tax consequences of that distribution by consulting the IRS website. Petitioner did not, however, inform his return preparer that he had received the distribution or ask his return preparer about the

**[*14]** tax consequences of IRA distributions generally. Given petitioner's background and the substantial size of the distribution, this is not reasonable. We therefore conclude that petitioner did not have reasonable cause for his underpayment and that he is liable for the accuracy-related penalty under section 6662(a) and (b)(2) for tax year 2015.

We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Appropriate decisions will be entered</u>.