T.C. Memo. 1999-282


UNITED STATES TAX COURT


LAW OFFICES--RICHARD ASHARE, P.C., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18439-97.                    Filed August 24, 1999.


        P is a corporate law firm, and A is its sole
shareholder and only professional employee.  P has
represented a class of plaintiffs from 1974 to date and
was awarded $12,567,623 in legal fees when the case was
settled in 1989.  P received those fees from 1989
through 1992 and is not entitled to further fees for
significant ongoing services which it must perform on
that case.  P's workload in and after 1990 was minimal,
except for the ongoing services.  P paid A $10,492,500
of "compensation" from 1989 through 1992 and, for each
year but one, reported no taxable income.  For 1990 P
reported taxable income of $3,775,699; $2,487,547 was
retained for P's future operations, and $1,282,998 was
retained to pay P's 1990 Federal income tax liability.
P paid A $1,750,000 of "compensation" during 1993 and
reported a $1,857,933 loss that it carried back to 1990
to claim a refund of $581,812.  P borrowed $916,756
from A and sold most of its assets to have the funds to
pay A the $1,750,000.  Exclusive of $1,373,913 of
Federal income tax refunds received or accrued by P on

its carryback of losses from 1991, 1992, and 1993, P's deficit in retained earnings on Dec. 31, 1993, was $1,463,768.

Held: R did not conduct a second examination of P's books of account in violation of sec. 7605(b), I.R.C.

Held, further, sec. 162(a)(1), I.R.C., allows P to deduct $1,750,000 in 1993 as reasonable compensation paid to A.

Gordon S. Gold, David J. Lieberman, and Barry R. Bess,[1] for petitioner.

Trevor T. Wetherington and Robert D. Heitmeyer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: Petitioner petitioned the Court to redetermine an income tax deficiency of $546,634 for 1990. The deficiency stems from respondent's determination that petitioner may not deduct $1,750,000 paid to its shareholder/employee in 1993 reportedly as compensation. Petitioner reported a net operating loss (NOL) for 1993 that it carried back to 1990.

We must decide the following issues:

---

[1] At the start of trial, the Court allowed Mr. Bess to withdraw as counsel because he was going to be a witness for petitioner.

1.  Whether respondent violated the prohibition of section 7605(b) against a second examination of petitioner's books of account for 1993.  We hold he did not.

2.  Whether section 162(a) allows petitioner to deduct the $1,750,000 as compensation.  We hold it does.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the applicable years.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioner is a corporate law firm that specializes in State and municipal employee pension benefits and the litigation thereof.  It uses the cash method for Federal income tax purposes and an accrual method for book purposes.  Its principal place of business was in Detroit, Michigan, when its petition was filed.

Richard Ashare, an attorney, incorporated petitioner in 1974 with a capital contribution of $1,000.  Mr. Ashare is petitioner's sole shareholder and one of its two employees. Petitioner's other employee is Mr. Ashare's secretary, Kathleen Moore Baker (Ms. Moore).  Petitioner has three directors:  Mr. Ashare, his wife, Marlene, and his longtime tax adviser, Barry

Bess. Petitioner has two officers: Mr. Ashare (president and treasurer) and Mrs. Ashare (secretary). Mr. Bess is petitioner's (and Mr. Ashare's) principal tax adviser; among other things, Mr. Bess advised Mr. Ashare on petitioner's incorporation in 1974.

Mr. Ashare has focused almost exclusively on one case (the Gentile case) during his employment by petitioner. In that case, Mr. Ashare, on behalf of petitioner, represented a class of 9,000 to 10,000 persons known as the Policeman and Fireman Retirement System of the City of Detroit. The class retained petitioner on a contingent fee basis to sue the city of Detroit (the city) for a correct computation of employee pension benefits.

In 1989, following prolonged litigation, the city agreed to pay the class $70 million to settle the Gentile case. The court overseeing the litigation awarded petitioner $12,567,623 of the settlement proceeds as legal fees. Petitioner received these fees from 1989 through 1992. Petitioner reportedly paid compensation of $10,492,500 to Mr. Ashare during the same years. Except for its work on the Gentile case, petitioner's workload in and after 1990 was and is minimal. Petitioner generally began to wind down its business after it settled the Gentile case, and its only case as of December 31, 1993, was the Gentile case.

Petitioner reported on its 1993 Form 1120, U.S. Corporation Income Tax Return, that it paid Mr. Ashare $1,750,000 in compensation. Mr. Ashare lent petitioner $916,756, and

petitioner liquidated most of its assets so that it would have the funds to pay Mr. Ashare the $1,750,000. Petitioner reported a $1,857,933 taxable loss for 1993, which, on February 14, 1994, it carried back to 1990 to receive a $581,812 refund of taxes paid for 1990. Petitioner's reported loss resulted in a reported deficit of $89,855 in retained earnings on December 31, 1993, which translates into a deficit of $1,463,768 in retained earnings exclusive of the tax refunds of $733,006, $59,095, and $581,812 described infra and supra. Petitioner's reported balance sheet at the beginning and end of 1993 was as follows:

|  | 1/1/93 | 12/31/93 |
|---|---|---|
| **Assets:** | | |
| Cash | $146,130 | $35,197 |
| Mortgage receivable | 11,000 | 11,000 |
| Loan receivable | 5,000 | -0- |
| Prepaid expense | 3,200 | 3,200 |
| Refundable income tax | 69,095 | 582,812 |
| Investments--marketable securities | 569,173 | 9,048 |
| Depreciable property (net of depreciation) | 197,164 | 187,113 |
| Total assets | 1,000,762 | 828,370 |
| **Liabilities:** | | |
| Payroll taxes withheld | 2,871 | 469 |
| Accrued pension contribution | 40,002 | -0- |
| Loans from shareholders | 8,800 | 916,756 |
| Total liabilities | 51,673 | 917,225 |
| **Shareholder's equity:** | | |
| Common stock | 1,000 | 1,000 |
| Retained earnings (deficit) | 948,089 | (89,855) |
| Total shareholder's equity (deficit) | 949,089 | (88,855) |
| Total liabilities & S/H's equity (deficit) | 1,000,762 | 828,370 |

Mr. Ashare, in his capacity as petitioner's employee, has served as trustee of the <u>Gentile</u> case settlement fund from 1989 to date. Following the settlement, petitioner has had to perform a "tremendous amount of work" administering the fund; e.g., it has had to identify and locate each <u>Gentile</u> case plaintiff, ascertain actuarially each plaintiff's pension benefit with the assistance of few or no records maintained by the city on its employees, and distribute to each plaintiff his or her ascertained benefit. Both Mr. Ashare and Ms. Moore, on behalf of petitioner, have devoted and continue to devote significant time and effort to the fund's administration, and petitioner continues to employ Ms. Moore full time at a salary of $45,000. Petitioner continues to lease the office space let to it since its incorporation. Except for the $12,567,623 award, petitioner is not entitled to any further compensation for the postsettlement services performed on the <u>Gentile</u> case. As of September 13, 1996, petitioner still had to locate and ascertain the benefits of approximately 900 plaintiffs. As of March 17, 1999, petitioner still had to locate and ascertain the benefits of approximately 500 plaintiffs.

Petitioner's items of income and expense as reported on its 1989 through 1993 Forms 1120 are as follows:

|  | 1989 | 1990 | 1991 | 1992 | 1993 |
|---|---|---|---|---|---|
| **Income:** | | | | | |
| Legal fees | | | | | |
| Gentile case | $2,030,341 | $5,774,602 | $100,000 | $4,662,680 | -0- |
| Other cases[1] | 309,380 | 8,156 | 20,725 | -0- | $30,525 |
| Total | 2,339,721 | 5,782,758 | 120,725 | 4,662,680 | 30,525 |
| Dividends | 9,993 | 23,966 | 149,875 | 202,378 | 30,746 |
| Interest | 140,267 | 108,551 | 11,571 | 18,635 | 8,641 |
| Business prop. sales | 164 | 75 | -0- | -0- | -0- |
| Client costs reimb. | -0- | -0- | -0- | 26,474 | -0- |
| Mediation fees | 3,000 | 2,250 | -0- | -0- | -0- |
| Total income | 2,493,145 | 5,917,600 | 282,171 | 4,910,167 | 69,912 |
| **Deductions:** | | | | | |
| Officer compensation | 2,151,666 | 1,690,834 | $2,000,000 | $4,650,000 | $1,750,000 |
| Secretary's compens. | 107,932 | 145,920 | 102,090 | 108,580 | 66,040 |
| Rents | 23,140 | 13,820 | 12,780 | 12,780 | 12,780 |
| Taxes | 21,036 | 104,800 | 119,995 | 30,196 | 11,898 |
| Interest | -0- | -0- | 215 | -0- | -0- |
| Depreciation | 5,437 | 2,974 | 4,135 | 8,535 | 7,816 |
| Officer pension plans | 88,900 | 56,089 | 97,106 | 101,990 | 27,678 |
| Employee benefits | 13,262 | 13,037 | 12,227 | 13,639 | 14,528 |
| Client/contract service | -0- | 20,889 | -0- | 6,000 | 4,500 |
| Seminars & publications | 3,364 | 2,988 | 1,844 | 2,500 | 2,124 |
| Insurance | 7,199 | 7,979 | 10,050 | 9,435 | 9,906 |
| Office | 6,478 | 17,151 | 427 | 3,730 | 4,156 |
| Postage | 1,830 | 1,158 | 1,686 | 1,176 | 2,188 |
| Professional fees | 8,661 | 14,797 | 36,372 | 12,881 | 22,033 |
| Entertainment | 32,450 | 26,021 | 19,556 | 16,976 | 6,624 |
| Telephone | 4,950 | 3,320 | 4,201 | 4,599 | 3,078 |
| Vehicles | 11,419 | 12,356 | 10,387 | 8,643 | 7,364 |
| Tuition | 5,250 | 5,677 | 5,000 | -0- | -0- |
| Reimbursements | -0- | -0- | -0- | -0- | (36,262) |
| NOL carryover from 1988 | 170 | 2,091 | -0- | -0- | -0- |
| Special deduction | -0- | -0- | -0- | 92,315 | 11,454 |
| Total deductions | 2,493,144 | 2,141,901 | 2,438,071 | 5,083,975 | 1,927,905 |
| Taxable income (loss) | -0- | 3,775,699 | (2,155,900) | (173,808) | (1,857,933) |
| Total Tax | -0- | 1,283,738 | -0- | -0- | -0- |

[1] Most (if not all) of these fees for 1989 are attributable to a cause of action alleged in the Gentile case but treated by petitioner as unrelated to the Gentile case.

In 1992, petitioner carried the 1991 loss back to 1990 and received a refund of $733,006 (and a corresponding abatement of an estimated tax penalty). In 1993, petitioner carried the 1992 loss back to 1990 and received a refund of $59,095 (and a corresponding abatement of the estimated tax penalty).

Respondent audited petitioner's 1990 through 1992 taxable years.  In connection therewith, petitioner agreed with respondent in December 1993 that some of the compensation paid to Mr. Ashare during the related years was constructive dividends; petitioner has never formally declared or paid a dividend.  The amounts recharacterized to dividends are as follows:

| Year | Reported compensation | Agreed compensation | Constructive dividends |
|------|----------------------|--------------------|-----------------------|
| 1989 | $2,151,666 | $2,151,666 | -0- |
| 1990 | 1,690,834 | 1,563,447 | $126,553 |
| 1991 | 2,000,000 | 1,947,045 | 52,958 |
| 1992 | 4,650,000 | 4,602,596 | 47,404 |

Following the audit, petitioner carried its 1993 loss back to 1990.

During the relevant years, petitioner's board did not convene as a board in person.  Every December, the board would transact its business for that year through one or more telephone conversations between Messrs. Bess and Ashare.  Board action was reflected in written resolutions signed by all three board members who, contemporaneously therewith, consented under State law for the board to act without an actual meeting.  Board action included setting each employee's compensation for that year in accordance with petitioner's unwritten compensation policy.

In accordance with petitioner's compensation policy, Mr. Bess telephones petitioner's accountant[2] every December, and the

---

[2] Petitioner's accountant during the relevant years was
(continued...)

accountant "recommends" to Mr. Bess the total amount of compensation that petitioner should pay its employees. Mr. Bess then telephones Mr. Ashare to relay the accountant's recommendation to him, and Mr. Ashare sets the specific amounts of compensation that petitioner will pay to him and Ms. Moore. Petitioner's plan of compensation for Mr. Ashare is to pay him annually all legal fees that petitioner receives during the year, less an amount equal to the sum of its corporate expenses (exclusive of Mr. Ashare's compensation) plus any funds retained for petitioner's future operations. Petitioner's plan of compensation, as applied, has allowed it through 1993 to report no profits subject to Federal income tax, except for its first 7 years of operation and for 1990. From petitioner's incorporation through 1995, petitioner reported the following profit (loss), compensation paid to Mr. Ashare, and contributions to Mr. Ashare's pension fund:

| Year Ended | Profit | Compensation Paid | Pension Contribution |
|------------|--------|-------------------|----------------------|
| 9/30/74 | $10,500 | $48,500 | $7,000 |
| 9/30/75 | 14,999 | 100,000 | 10,000 |
| 9/30/76 | 10,715 | 63,263 | 7,143 |
| 9/30/77 | 14,940 | 87,500 | 9,960 |
| 9/30/78 | 12,563 | 87,500 | 8,375 |
| 9/30/79 | 13,616 | 75,000 | 9,077 |
| 9/30/80 | 13,014 | 70,000 | 8,696 |
| 9/30/81 | -0- | 55,417 | 7,261 |

---

[2](...continued)
Herbert Lazarus of Lazarus, Rice & Lopatin, C.P.A.'s, P.C.
Mr. Lazarus has since died.

| | | | |
|---|---|---|---|
| 9/30/82 | -0- | 17,500 | 3,699 |
| 9/30/83 | -0- | 20,417 | 3,900 |
| 9/30/84 | -0- | 100,000 | 107,881 |
| 9/30/85 | -0- | 130,000 | 113,082 |
| 9/30/86 | -0- | 96,250 | 105,444 |
| 9/30/87 | -0- | 157,445 | 102,047 |
| 12/31/87 | -0- | 23,333 | 20,068 |
| 12/31/88 | -0- | 921,334 | 63,178 |
| 12/31/89 | -0- | 2,151,666 | 88,901 |
| 12/31/90 | 3,775,699 | 1,690,834 | 56,089 |
| 12/31/91 | (2,155,900) | 2,000,000 | 97,106 |
| 12/31/92 | (173,808) | 4,650,000 | 101,990 |
| 12/31/93 | (1,857,933) | 1,750,000 | 27,678 |
| 12/31/94 | [1] | -0- | [1] |
| 12/31/95 | [1] | -0- | [1] |

[1] Undisclosed by the record.

Petitioner's board resolved on December 31, 1990, that petitioner would retain $2,487,547 of its 1990 profit for "the reasonably anticipated needs of the business for the forthcoming years";[3] petitioner used another $1,282,998 to pay its 1990 Federal income tax liability.  The board also resolved on that date that petitioner would pay $1,690,834 in compensation to Mr. Ashare during 1990 "in consideration of the efforts expended by Richard Ashare on behalf of the Corporation for the calendar year ending December 31, 1990".

The board resolved on December 31, 1993, that petitioner would pay $1,750,000 in compensation to Mr. Ashare "in consideration of the efforts expended by Richard Ashare on behalf of the Corporation for both the calendar year ending December 31,

---

[3] The record does not identify the "reasonably anticipated needs" for which petitioner retained some of the 1990 earnings.

1993 and for prior years' efforts yet uncompensated".  One day before, Mr. Ashare had received and deposited petitioner's check in the amount of $1,061,971.  The board also resolved on December 31, 1993, that petitioner's officers are "authorized, empowered and directed, for and on behalf of the Corporation, to execute a Promissory Note in favor of the sole Shareholder in the principal amount of Eight Hundred Sixteen Thousand Seven Hundred Fifty-Six and no/100 ($816,756.00) Dollars".  Petitioner issued the referenced note to Mr. Ashare on the same day.  The board also resolved on December 31, 1993, that $100,000 of the $916,756 that Mr. Ashare lent petitioner during the year "shall be duly reflected" on petitioner's books as a contribution to capital. Petitioner's December 31, 1993, balance sheet does not reflect any of the lent amount as a capital contribution, and Mr. Bess does not understand Mr. Ashare to have transferred the $100,000 to petitioner as a capital contribution.

Respondent began auditing petitioner's 1993 taxable year in or about December 1994, and the case was assigned to a revenue agent who had not been involved in the audit of petitioner's 1990 through 1992 taxable years.  The agent examined petitioner's 1993 tax return and requested and received correspondence from petitioner's representative, David Lieberman.  The agent had no direct contact with either Mr. Ashare or any of petitioner's other officers or employees.

On August 10, 1995, the agent prepared a report that stated that petitioner was liable for alternative minimum tax (AMT); the agent limited the scope of his report to AMT because the application thereof generated the maximum amount of taxes that could be recovered for 1993. On the same day, respondent forwarded the agent's report to Mr. Bess as part of a 30-day letter. Petitioner had notified respondent that Mr. Lieberman and his coworker, Mr. Bess, both served as its representatives for purposes of the 1993 audit. On January 29, 1996, the agent, after learning months before that he had incorrectly applied AMT to petitioner's 1993 taxable year, prepared a second report that stated that petitioner was not entitled to deduct any of Mr. Ashare's "compensation". On the same day, the respondent mailed that report to Mr. Bess as part of a second 30-day letter.

Between the dates of the 30-day letters, the agent was considering Mr. Ashare's personal income tax liability. In connection therewith, the agent requested petitioner's board minutes from Mr. Lieberman, who also represented Mr. Ashare. Mr. Lieberman delivered to the revenue agent petitioner's board resolutions for 1993, which included the resolution mentioned above as to the promissory note. The agent prepared his second report on petitioner's 1993 taxable year on the basis of information that he received from petitioner on or before August 10, 1995.

OPINION

We must decide whether any or all of the $1,750,000 paid to Mr. Ashare in 1993 was reasonable compensation under section 162(a)(1). Petitioner argues it was, asserting that it paid Mr. Ashare the disputed amount to compensate him for past and present services. Petitioner asserts that it had a formula under which Mr. Ashare would be paid all legal fees received by petitioner and that the $12,242,500 paid to Mr. Ashare over the 5-year period from 1989 to 1993 was less than the $12,567,623 received on the Gentile case. Respondent argues that the disputed amount is nondeductible because it was neither reasonable in amount nor paid to Mr. Ashare to compensate him for past or present services.

Before deciding this issue, we pause to discuss a claim by petitioner that respondent violated its rights under section 7605(b) by conducting a second examination of its books of account for 1993. Petitioner contends that the revenue agent performed a second examination when he asked Mr. Lieberman for petitioner's minutes. Petitioner asserts that respondent needed petitioner's 1993 board resolutions to determine that petitioner had paid Mr. Ashare unreasonable compensation during that year. We understand petitioner to conclude that respondent, because of the purported second examination, is precluded from asserting in

this proceeding that Mr. Ashare's 1993 compensation is nondeductible.[4]

We disagree with petitioner that respondent is precluded by section 7605(b) from asserting that it may not deduct the compensation it paid Mr. Ashare in 1993.  Section 7605(b) generally limits the Commissioner to "one inspection of a taxpayer's books of account * * * for each taxable year".  Congress enacted this section intending "to guarantee that taxpayers whose accounts had been closed * * * [will] not be subject to 'unnecessary' harassment by being required frequently to present their 'books of account' to the income tax agency".  Hinchcliff v. Clarke, 371 F.2d 697, 700 (6th Cir. 1967).  Congress did not intend for section 7605(b) to be a severe restriction on the Commissioner's powers in monitoring and enforcing the Code.  See United States v. Powell, 379 U.S. 48,

---

[4] Petitioner, taking language from Reineman v. United States, 301 F.2d 267 (7th Cir. 1962), argues that the Court "must * * * set aside the deficiency assessment set forth in * * * [the revenue agent's second report]" because of a violation of the sec. 7605(b) prohibition against a second examination.  That language is inapplicable to a proceeding originating in this Court.  When a proceeding originates in a District Court, as was the case in Reineman, the Commissioner has already assessed the deficiency that is the subject of the proceeding.  When a proceeding originates in this Court, the Commissioner usually has not assessed a deficiency.  Absent certain exceptions, none of which are applicable here, the filing of a petition in this Court bars the Commissioner from assessing a deficiency until after the decision entered by this Court becomes final.  See sec. 6213(a).

54-56 (1964); see also Crosby v. Commissioner, T.C. Memo. 1970-286.

We are unable to conclude under the facts herein that respondent violated the second examination prohibition of section 7605(b).  The record simply does not persuade us that respondent performed more than one inspection of petitioner's books of account.  Whereas petitioner argues that a second inspection occurred mainly because the revenue agent, on behalf of the Commissioner, prepared two reports, we do not agree.  That the Commissioner may issue two or more reports on a single taxable year of a taxpayer does not necessarily mean that the Commissioner performed more than one examination of the taxpayer's books of account.  See United States v. Balanced Fin. Mgt., Inc., 769 F.2d 1440, 1446 (10th Cir. 1985) ("'the standard is whether the examination or investigation sought by the IRS is unnecessarily duplicative of some prior examination'" (quoting United States v. Davey, 543 F.2d 996, 1000 (2d Cir. 1976)); see also Brodhead v. Commissioner, T.C. Memo. 1979-113.  The applicability of section 7605(b), as relevant herein, turns as a threshold matter upon a finding of unnecessary multiple examinations of a taxpayer's books of account and does not rest upon a finding that a revenue agent may have prepared multiple reports on his or her examination of the underlying year.  See Feldman v. Commissioner, T.C. Memo. 1985-132; see also Hall v.

Commissioner, 406 F.2d 706, 710 (5th Cir. 1969) (the term "books of account" as used in section 7605(b) is limited to the taxpayer's books and records), affg. 50 T.C. 186 (1968); Geurkink v. United States, 354 F.2d 629, 631 (7th Cir. 1965) (same); Estate of Adams v. Commissioner, T.C. Memo. 1967-221 (same), and the cases cited therein.

Nor does the record support petitioner's proposed finding that the Commissioner needed its 1993 board resolutions to learn that Mr. Ashare had made a large loan to petitioner during 1993, or, more importantly, to determine that petitioner could not deduct the amount of compensation reportedly paid to Mr. Ashare during that year. Before commencing his examination of petitioner's 1993 taxable year, respondent had petitioner's 1993 corporate income tax return, which stated explicitly that: (1) Petitioner was deducting $1,750,000 in compensation paid to its sole shareholder, Mr. Ashare, (2) the $1,750,000 deduction was generating a $1,857,933 taxable loss for 1993, (3) petitioner owed Mr. Ashare $916,756 on December 31, 1993, and that he had lent at least $907,956 of that amount to petitioner during 1993, (4) petitioner had a reported retained earnings deficit of $89,855 at December 31, 1993, and (5) petitioner had liquidated most of its assets in 1993. Respondent also was privy to the fact that petitioner had used almost all of its 1993 reported loss to claim a $581,812 refund for taxes paid for 1990 and that,

after the 1993 taxable year, petitioner would no longer be allowed to recover those taxes by virtue of a carryback.  Section 7605(b) is not violated in a case such as this, where the Commissioner simply applies the facts, figures, and other data within his lawful possession with an eye towards a legitimate governmental purpose of determining the correct tax liability of a taxpayer under examination.  See Jackson v. Commissioner, T.C. Memo. 1982-556; see also Pleasanton Gravel Co. v. Commissioner, 64 T.C. 510, 528 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978).

We also find it meaningful that the revenue agent was contemporaneously considering issues as to the personal income tax liability of Mr. Ashare, who was petitioner's officer, director, sole shareholder, and key employee.  That the Commissioner may glean from the books of an individual third party such as Mr. Ashare information that is relevant to the tax liability of his or her controlled entity does not necessarily mean that the Commissioner performs an improper second examination of the entity under section 7605(b).  See Geurkink v. United States, supra at 631 ("We emphasize that sec. 7605(b) relates to a second examination of books of account of a taxpayer and does not apply to an examination of books of account of a third person.").  In some settings, the Commissioner's examination of the books of a corporation's officer, shareholder,

or employee may actually be an examination of the corporation's books because of the inextricable identity between them or because examination of the individual's books serves as a subterfuge for examining the corporation's books; e.g., where the separate accounts are all maintained in the same volume. Compare Reineman v. United States, 301 F.2d 267 (7th Cir. 1962), and Application of Leonardo, 208 F. Supp. 124 (N.D. Cal. 1962), with Hall v. Commissioner, 50 T.C. at 201-202, and United States Holding Co. v. Commissioner, 44 T.C. 323, 327-328 (1965). The record at hand, however, lacks the requisite evidentiary foundation to persuade us that any examination of Mr. Ashare's books of account was a subterfuge for examining petitioner's books. The record merely suggests that the revenue agent simply did what he purported to do; namely, gather information on the potential personal income tax liability of Mr. Ashare, a taxpayer who, although related to petitioner, is separate and distinct from it. See United States Holding Co. v. Commissioner, supra.

We turn to the primary issue; namely, whether section 162(a) allows petitioner to deduct the $1,750,000 paid to Mr. Ashare as compensation. A payment of compensation is deductible under that section if it is reasonable in amount and for services actually rendered to the payor in or before the year of payment. See sec. 162(a)(1); Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119 (1930); Alpha Med., Inc. v. Commissioner, 172 F.3d 942, 945 (6th Cir.

1999), revg. T.C. Memo. 1997-464; sec. 1.162-7(a), Income Tax Regs.; see also Pulsar Components Intl., Inc. v. Commissioner, T.C. Memo 1996-129; Mad Auto Wrecking, Inc. v. Commissioner, T.C. Memo 1995-153. Petitioner must prove that it may deduct compensation in an amount greater than that determined by respondent. See Rule 142(a). Careful scrutiny of the facts is appropriate in a case such as this where the payor is controlled by the payee/employee. See Pulsar Components Intl., Inc. v. Commissioner, supra; Mad Auto Wrecking, Inc. v. Commissioner, supra.

We have no doubt that the $1,750,000 paid to Mr. Ashare meets the first test for deductibility; i.e., it is reasonable in amount as to the compensation that a personal service corporation such as petitioner could pay its key employee in a year for his services. Mr. Ashare's qualifications for his position with petitioner justify high compensation, as does the fact that he is vital and indispensable in petitioner's operation and success. Petitioner's business also is complex and highly specialized, and it demands a person of Mr. Ashare's expertise. See Alpha Med., Inc. v. Commissioner, supra at 945; Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), revg. and remanding a Memorandum Opinion of this Court dated Nov. 16, 1948; see also Pulsar Components Intl., Inc. v. Commissioner, supra; Mad Auto Wrecking, Inc. v. Commissioner, supra.

The mere fact that the $1,750,000 is reasonable in amount does not necessarily mean that it is deductible in full. A deduction for compensation is not allowed to the extent that the compensation is paid for something other than services rendered by the payee/employee primarily in or before the year of payment. See sec. 162(a)(1); Whitcomb v. Commissioner, 733 F.2d 191, 193 (1st Cir. 1984), affg. 81 T.C. 505 (1983); Bonaire Dev. Co. v. Commissioner, 679 F.2d 159 (9th Cir. 1982), affg. 76 T.C. 789 (1981); King's Ct. Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 514 (1992); Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); see also Tool Producers, Inc. v. Commissioner, T.C. Memo. 1995-407, affd. without unpublished opinion 97 F.3d 1452 (6th Cir. 1996). This brings us to our second inquiry: Did petitioner pay Mr. Ashare the disputed amount primarily for services provided in or before 1993? On the basis of our review of the record, we conclude it did. According to petitioner, the $1,750,000 is deductible in full mainly because the $12,242,500 paid to Mr. Ashare from 1989 through 1993 is less than the $12,567,623 received on the Gentile case. Respondent replies that petitioner is incorrect as to the mechanics of its compensation formula. Messrs. Ashare and Bess testified that Mr. Ashare's compensation was set at the legal fees received by petitioner during the year, less corporate

expenses, and respondent applies that testimony to conclude that Mr. Ashare was overcompensated in each of the years relevant herein and entitled to no compensation for 1993. Respondent notes that 1993 was the last year from which petitioner could carry back an NOL to 1990 to recover the Federal income taxes paid for that year, see sec. 172(b)(1) (a carryback of an NOL such as the one at hand is limited to the prior 3 years), and argues that the main reason for the $1,750,000 payment was to recover those taxes. Respondent notes that petitioner had a significant deficit in retained earnings on December 31, 1993.

We agree with petitioner that it may deduct the $1,750,000 because it paid the amount to Mr. Ashare to compensate him for work on the Gentile case. Up until the time that the Gentile case was settled in 1989, Mr. Ashare, on behalf of petitioner, had performed significant services on that case to entitle the class to receive the $70 million settlement payment. Afterwards, petitioner, and hence, Mr. Ashare, was obligated to perform significant services in administering the proper disposition of that $70 million payment. But for Mr. Ashare, petitioner never would have received the $12,567,623 of legal fees in the first place. But for Mr. Ashare, petitioner would never be able to dispose of the settlement funds properly. Given the necessity and indispensability of Mr. Ashare's services on the Gentile case, we do not believe it unreasonable to conclude, as we do,

that petitioner paid Mr. Ashare the $1,750,000 to compensate him for services connected to that case.

Respondent focuses on petitioner's longstanding compensation formula and observes that the amount of Mr. Ashare's compensation does not follow from an application of that formula. Respondent concludes that petitioner paid the $1,750,000 to Mr. Ashare without the requisite intent to compensate him for his services. We do not agree. Although it is true, as respondent observes, that petitioner did not correctly apply its longstanding formula to ascertain Mr. Ashare's compensation for 1993, petitioner's management obviously decided that Mr. Ashare was entitled to be paid a greater amount during that year. It does not matter that petitioner's revenues during that year were less than the $1,750,000 payment, or that the $1,750,000 payment produced a deficit in retained earnings. The dispositive fact of this case is that petitioner's board, through an exercise of unwritten corporate policy, set Mr. Ashare's compensation for 1993 at $1,750,000.

The facts of this case indicate that the board truly believed that Mr. Ashare's services were worth paying him $1,750,000 in 1993. Mr. Bess testified adamantly that the board considered the value of petitioner's past and present services when it set Mr. Ashare's compensation for each year, and we find in the record that the board knew how to limit Mr. Ashare's

compensation to the value of his uncompensated services as of the end of each year. The board, for example, considered the value of Mr. Ashare's uncompensated services as of December 31, 1990, and resolved specifically that Mr. Ashare's compensation for that year was limited to services performed during that year. Petitioner definitely had the opportunity, the means, and a strong tax incentive to inflate Mr. Ashare's compensation for that year. It did not, which indicates to us that the board was set on establishing Mr. Ashare's compensation at its fair value.

In this regard, the board resolved that Mr. Ashare was entitled to receive compensation of $1,750,000 during 1993 for his past and present services. The board, through the exercise of its sound business judgment, resolved that Mr. Ashare was entitled to that amount of compensation, and we decline to second guess the board's wisdom. The board knew that 1993 was the last year from which petitioner could use an NOL to recover all of the taxes which it paid for 1990 and that paying petitioner the $1,750,000 would allow it to recover all those taxes. The board also knew that petitioner had a continuing obligation to provide significant services on the Gentile case for many years after 1993, that petitioner's revenues in post-1992 years would practically be nonexistent, and that petitioner would not have any resources to pay Mr. Ashare future compensation.

We also believe it critical that petitioner had the funds to pay Mr. Ashare the $1,750,000. Petitioner did not pay Mr. Ashare the $1,750,000 by way of a debt instrument such as a promissory note. Petitioner used funds which it was able to raise through a liquidation of assets, most of which were obtained on account of the efforts of Mr. Ashare, and through one or more loans. The fact that Mr. Ashare is the one who lent the funds to petitioner is of no consequence. It is a legitimate managerial function to ascertain the amount of employee compensation that will be paid in a year, and, absent abuse, which is not present here, we decline to second-guess management's decision on the amount and timing of that compensation or on the manner in which management goes about obtaining the underlying funds.

We hold that petitioner may deduct the $1,750,000 payment to Mr. Ashare as reasonable compensation. In so holding, we have considered all arguments made by the parties and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.